STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

WCA 03-500


ANDREA SEYFARTH

VERSUS

NEW DAY OUTPATIENT REHAB


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 00-07010
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billie Colombaro Woodard, Michael G. Sullivan, and Billy
Howard Ezell, Judges.

                                                                **AFFIRMED.**




**Christopher Alan Edwards**
**Ewards Law Firm**
**P. O. Box 2970**
**Lafayette, LA 70502-2970**
**(337) 237-6881**
**Counsel for: Plaintiff/Appellant**
**Andrea Seyfarth**




**Debra Talbot Parker**

**Johnson, Stiltner & Rahman**
**P. O. Box 98001**
**Baton Rouge, LA 70898-8001**
**(225) 930-0437**
**Counsel for: Defendant/Appellee**
**New Day Outpatient Rehab**

**EZELL, JUDGE.**

Andrea Seyfarth appeals a workers' compensation judgment holding that a July 19, 1999 work accident was a very temporary aggravation of a pre-existing neck condition and that there was insufficient evidence to establish a work-related accident on September 3, 1999.

**FACTS**

Seyfarth was employed by New Day Outpatient Rehabilitation as an occupational therapist. For approximately ten years she suffered with neck problems, taking a turn for the worse in 1997. On February 23, 1999, Dr. Luiz DeAraujo performed a hemilaminectomy of C6 on the right side and foraminotomies at C5-6 and C6-7 on the right side. Her pain improved remarkedly after surgery, but she testified that she still suffered with some significant pain. She was referred to Dr. Norman Anseman for physical rehabilitation following surgery.

Dr. Anseman first examined Seyfarth on April 7, 1999. He diagnosed her with cervical spondylosis with some residual problems from the surgery. He observed a considerable amount of spasm on the right side. On June 12, 1999, Seyfarth had a flare-up resulting in a worsened range-of-motion and or spasm. She had just gotten married and believed that tension and stress were causing her problems. On June 24, Dr. Anseman injected her left shoulder which had also become aggravated.

Dr. Anseman next saw Seyfarth on July 21, 1999, a few days after her first claimed work accident. Seyfarth related to Dr. Anseman how she had been preparing to give a workshop on July 19 and had to move an exercise mat causing another flare-up. His examination indicated that there was no spasm on the right but her left side had increased spasm. Her neurological exam was normal. He thought she would be better by the next visit.

Seyfarth next called Dr. Anseman on September 9 to complain that she was on

1

the downhill with her neck. She was seen by Dr. Anseman on September 15, at which time she reported the second claimed work accident at issue in this case. Seyforth explained to Dr. Anseman that, while performing a functional capacity evaluation, she lifted a seventy-pound weight off a patient, again causing a flare-up. At trial, Seyfarth explained that she actually removed ten pounds at a time for a total of forty pounds and then lowered a box with the remaining thirty pounds. He noted a new area of spasm along the thoracic spine.

On November 5, 1999, Seyfarth left her employment with New Day. She gave one-month notice before she left. On August 31, 2000, Seyfarth filed a disputed claim for compensation. Following trial of the matter, the workers' compensation judge (WCJ) issued judgment dismissing Seyfarth's claims. Seyfarth appeals to this court arguing that the facts and testimony overwhelmingly support her description of the accidents and their effect on her.

## SEPTEMBER 3, 1999

Seyfarth first claims that the WCJ was manifestly erroneous in finding the evidence insufficient to establish a work-related accident on September 3, 1999. Restating the definition of the "manifest error" standard, the supreme court in *Edwards v. Sawyer Indus. Plastics, Inc.*, 99-2676, p. 9 (La. 6/30/00), 765 So.2d 328, 333, quoted from *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973), as follows:

> When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.

2

The WCJ gave the following reasons for her decision:

> The WCJ finds the evidence insufficient to establish a work-related accident on September 3, 1999. While the defense witnesses completely contradicted the claimant's testimony as to the occurrence of the second accident, Dr. Anseman noted a new area of spasm along the thoracic spine at his examination of September 15. This new objective finding tended to corroborate the claimant's allegation of a new event between his last exam of July 21 and the exam of September 15. However, the physical therapy records introduced as Plaintiff's exhibit 18 reflect that the thoracic complaints began on August 19, some two weeks before the alleged accident of September 3. Those complaints decreased on August 26 and August 31, but increased on September 2, the day before the alleged incident with the FCE. There is no corroboration of a September 3 accident and the WCJ finds that no work-related accident occurred on that date.

We have reviewed the record and find no manifest error in the WCJ's decision. Seyfarth began attending physical therapy at the Orthopedic and Sports Physical Therapy Clinic of Lafayette on August 10, 1999. On her visit on August 19, 1999, she complained of upper thoracic pain and left scapula tightness which was also observed by the therapist. It was even noted that she had increased upper thoracic pain the day before the alleged September 3, 1999 accident.

Seyfarth also testified that she told several people at work about the incident, which they all denied. Sarah Leblanc, who worked at New Day, but was no longer employed when she testified, stated that she was taking pictures while Seyfarth was performing the evaluation on September 3, 1999. Leblanc testified that Seyfarth did not complain to her that she was hurt. She did not recall Seyfarth lifting any weights that day.

Testimony also revealed that Seyfarth was involved in an automobile accident in August 1999. She had also experienced a flare-up in July 1999 when she was lifting and unloading chairs at a family reunion. In addition to these incidents, the WCJ was aware of the fact that Seyfarth made numerous telephone calls requesting that Dr. Anseman issue addendums to his medical notes about her medical problems.

3

Seyfarth testified that she left work because she was still having pain and she wanted to get healthy to have a baby. She was also trying to lose weight and get her cholesterol levels down. She did continue to work for a month after she gave notice.

While Dr. Anseman's medical records support that Seyfarth reported the September 3 incident to him on her September 15 visit, and he noticed what he considered to be a new finding, the record is replete with instances that discredit Seyfarth's testimony. In addition to the fact that no one at work supported her testimony that she told them about the incident, medical records indicate that she had existing problems in this same area, even the day before the incident. There were also intervening, nonwork-related incidents that could have just as well caused Seyfarth's problems. We cannot say the WCJ was clearly wrong in finding that there was no accident on September 3, 1999.

## JULY 19, 1999

Seyfarth also claims that the WCJ was manifestly erroneous in finding that any work incident of July 19, 1999, was a very temporary aggravation of the pre-existing condition which subsided quickly and without residual problems. She claims that the medical evidence proves that Seyfarth continued to have problems as a result of the July 19 incident.

In explaining how she hurt herself, Seyfarth stated that she and Jackie Cusimano were getting ready the morning of July 19 for a workshop. They needed additional room, so they decided to move a mat out of the way. Seyfarth pushed the mat, and about an hour later, experienced spasms and increased pain in her neck.

The WCJ found that, "Comparison of the June 17 and July 21, 1999 examinations reflect that Ms. Seyfarth was actually improved after the alleged July 19, 1999 incident. In fact, in his July 21 report, Dr. Anseman stated he believed she

4

would be ready for discharge by the time of her next visit."

We agree with WCJ that Dr. Anseman's medical records indicate improvement in Seyfarth's condition from her initial visit with him following her July 19 incident. Furthermore, Seyfarth saw Dr. DeAraujo on the day of the incident and his notes reveal that Seyfarth is "doing well, is virtually free of pain and with a normal neurologic examination. . . . I am discharging her today from my care . . . ." Additionally, while Seyfarth testified that Cusimano knew she had hurt her neck, Cusimano testified that she never saw or heard anything that indicated Seyfarth's neck was hurting.

We cannot say the WCJ was clearly wrong in finding that Seyfarth did not suffer any residual problems as a result of the July 19, 1999 incident. The record indicates that Seyfarth continues to suffer with the neck problems she was experiencing before any of these incidents. There is also evidence that she had flare-ups before the incident which resolved, and it could be assumed that she would continue to have flare-ups which would also resolve.

For the above reasons, we find the record supports the judgment of the WCJ and affirm the judgment of the Office of Workers' Compensation. Costs of this appeal are assessed to Andrea Seyfarth.

**AFFIRMED.**

5